IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANGELA STEWART,          )
                         )
    Plaintiff,           )
                         )
v.                       )  Civil Action No. 3:22-cv-635-HEH
                         )
NOTTOWAY COUNTY, *et al.*,  )
                         )
    Defendants.          )

### MEMORANDUM OPINION
(Granting Defendants' Motions to Dismiss
and Dismissing Plaintiff's Complaint)

This matter is before the Court on Defendants'[1] Motions to Dismiss (ECF Nos. 81, 83, 86, 95, 97, 99), filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Angela Stewart ("Plaintiff" or "Stewart") filed her Second Amended Complaint (ECF No. 79) on March 8, 2023, alleging violations of both state and federal law. She alleges that the Nottoway County Electoral Board (the "Board") and its members (the "Board members") unlawfully terminated her as General Registrar of Nottoway County. Plaintiff specifically alleges violations of her rights under the United States Constitution ("U.S. Constitution") as well as violations of Virginia Code § 24.2-110, Virginia tort law, and her Virginia Constitutional rights. (Second Am. Compl. ¶¶ 86–199.)

---

[1] Defendants include: Nottoway County; Nottoway County Board of Supervisors; Nottoway County Electoral Board; Nottoway County Electoral Board members: Sarah Allen, Mae Tucker, Christopher Page, Thomas Reynolds, and April Wright; John Roark; and Thomas Crews. (Second Am. Compl. at 3–4, ECF No. 79.)

The parties have submitted extensive memoranda detailing their respective positions, and oral argument was heard on May 16, 2023. For the following reasons, the Eleventh Amendment bars Plaintiff's U.S. Constitutional claims and thus, does not establish the requisite federal question jurisdiction of this Court. Therefore, Defendants' Motions to Dismiss will be granted as to Counts III, IV, V, and VI. The Court will not exercise supplemental jurisdiction over the remaining state law claims and will dismiss Plaintiff's Second Amended Complaint.

## I. BACKGROUND

Stewart served the last 28 years in the General Registrar's Office for Nottoway County. (Second Am. Compl. at 2.) She spent her first seven years as the Assistant Registrar, and the remaining 21 years as the General Registrar. On September 24, 2021, the Board terminated Stewart as General Registrar. (*Id.*) Stewart alleges this termination was unlawful and seeks reinstatement of her pervious position as well as monetary damages. (*Id.*)

### A. Administration of Elections in Virginia

Federal, state, and local elections in Virginia are administered by a hierarchy of state entities and officials, consisting of the State Board of Elections (the "State Board"), local electoral boards, general registrars, deputy or assistant registrars, and officers of elections. *See* Va. Code § 24.2-101. The State Board, through the Department of Elections, supervises and coordinates the work of the "county and city electoral boards and of the registrars to obtain uniformity in their practices and proceedings . . . ." *Id.* § 24.2-103; *see also Mr. Charles W. Haney and Ms. Mary G. Turner*, Op. No. 19-053,

2

2020 WL 1058331, at *3 n.7 (Va. A.G. Feb. 28, 2020) ("Both the registrar and the local electoral board remain subject to the ultimate oversight of the State Board . . . ."). Virginia Code § 24.2-106 outlines that each county and city in Virginia shall have an electoral board composed of three members, who shall be appointed by the chief judge of the judicial circuit.

Each local electoral board appoints a general registrar, "who oversees voter registration and serves as director of elections for the locality." *Mr. Charles W. Hanes*, 2020 WL 1058331, at *1; *see* Va. Code §§ 24.2-109 and -110. A general registrar's specific duties include maintaining public places for voter registration, educating the public regarding voter registration, maintaining the official voter registration records, verifying the accuracy of pollbooks, and "carry[ing] out such other duties as prescribed by the electoral board . . . ." *Id.* § 24.2-114. Local electoral boards perform annual performance reviews of general registrars. *See id.* § 24.2-109.1.

General registrars serve four-year terms, *id.* § 24.2-110, and are paid through a compensation plan established by the General Assembly, *id.* § 24.2-111. The locality where the general registrar serves pays such compensation and is then "reimbursed annually" by the state treasury. *Id.* Additionally, as was in place at the time of the alleged unlawful conduct, "[t]he electoral board by a recorded majority vote may remove from office, on notice, any general registrar or officer of election who fails to discharge the duties of his office according to law." Va. Code § 24.2-109(A) (2020).[2]

---

[2] The Court notes that on March 22, 2023, the General Assembly amended and reenacted Virginia Code §§ 24.2-103, -109, -234, and -235. In addition, the General Assembly added

3

## B. The Board's Termination of Stewart

The Board appointed and re-appointed Stewart on four-year terms as General Registrar without interruption for nearly 18 years.[3] (Second Am. Compl. ¶ 16.) The Board last re-appointed Stewart on April 19, 2019, to a four-year term commencing on July 1, 2019. (*Id.* ¶ 17.) Beginning in 2021, the Board was comprised of three members—Ms. Sarah Allen ("Allen"), Ms. Mae Tucker ("Tucker"), and Christopher Page ("Page"). (*Id.* ¶¶ 8–10.)

On August 25, 2021, Stewart, allegedly "speaking as a private citizen but drawing upon her 28 years in the General Registrar's Office," spoke publicly at a Board meeting and told its members "that they did not understand their roles and were not carrying out their duties." (*Id.* ¶ 22.)

On September 23, 2021, the Board held another public meeting. (*Id.* ¶¶ 23, 29, 39.) During this meeting, the Board allegedly met in closed session with its legal counsel to discuss personnel matters involving staff of the General Registrar's Office.[4] (*Id.* ¶ 29.)

---

§ 24.2-234.1, which institutes a new procedure for removing members of local electoral boards and general registrars. There was no explicit retroactivity provision included in the passage of the new amendments. Thus, the new amendments have no effect on the case at hand and the Court must interpret the statute at the time the alleged unlawful conduct occurred. *See Virginia Elec. and Power Co. v. State Corp. Comm'n*, 861 S.E.2d 47, 54 (Va. 2021) ("Rights accrued under the former law before the passage of an amended statute will not be affected by the amendment, but will be governed by the original statute, unless a contrary intention is expressed in a latter statute.") (cleaned up). Therefore, all references herein are to the Virginia Code provisions active at the time of Defendants' alleged unlawful conduct.

[3] Stewart alleges that she received "excellent and/or above average annual reviews" from the Board for every year that she served as General Registrar, except for the review conducted by the Board in 2021. (Second Am. Compl. ¶ 20.)

[4] Stewart alleges that the Board conducted the meeting first, then only after convening the

4

Stewart contends that this meeting was in violation of Virginia Code § 2.2-3707(F)[5] because the Board did not "include as an item of business that [the Board] would consider terminating Ms. Stewart's appointment." (Second Am. Compl. ¶ 29.) Additionally, Defendant John Roark ("Roark"), who was not a Board member, was also allegedly present at the meeting. (*Id.* ¶ 32.) Stewart asserts that Roark "intentionally provided [inaccurate] information to Allen, Tucker, and Page so as to place Ms. Stewart in a false light" and "has boasted that he played a role" in her removal. (*Id.* ¶¶ 33, 35.)

During the evening of September 23, while the meeting was in an overnight recess, the Board had the Nottoway Sheriff's Office serve Stewart notice regarding her possible removal. (*Id.* ¶ 39.) The notice delivered to her stated, *inter alia*, that "[p]ursuant to Va. Code § 24.2-109 . . . [she] may be removed for [her] failure to discharge the duties of [her] office and other duties found in Title 24.2 of the Code of Virginia, as required by law." (*Id.* ¶ 40.) Specifically, the notice outlined that the Board was considering Stewart's removal for, *inter alia*, her failure "to post timely and accurate notice[s] of all voter satellite office locations," "to properly [] apply for grant funding,"

---

meeting did the Board amend the agenda to insert that it was a closed session. (Second Am. Compl. ¶ 29.)

[5] Virginia Code § 2.2-3707(F) states:

> At least one copy of the proposed agenda and all agenda packets and, unless exempt, all materials furnished to members of a public body for a meeting shall be made available for public inspection at the same time such documents are furnished to the members of the public body. The proposed agendas for meetings of state public bodies where at least one member has been appointed by the Governor shall state whether or not public comment will be received at the meeting and, if so, the approximate point during the meeting when public comment will be received.

5

"to correct the posting issues brought to your attention," "to improve [her] performance with respect to engaging in professional behavior," "to work constructively with the Board," and "to discharge [her] duties impartially . . . without bias." (Second Am. Compl. ¶ 41.)

The notice further informed Stewart that the Board would consider her removal as General Registrar the following day, September 24, at the continuation of the Board's meeting. (*Id.* ¶ 45.) At that time, the Board would give her 30 minutes to speak and address the concerns they had regarding her job performance, and she would be able to provide any information she wished in her defense. (*Id.*) Stewart asserts that this notice failed to comply with Virginia Code §§ 24.2-107 and 2.2-3707, which required that public notice of the meeting be posted "at least three working days prior to the meeting."

On September 24, the Board continued its meeting from the previous day. (Second Am. Compl. ¶ 23.) Stewart did not attend the meeting, nor did she submit a written response regarding the Board's notice. Allen then moved "under § 24.2-109 to remove from office [Stewart] as General Registrar to whom proper notice was given, for her failure to discharge the duties of her office according to law, effective immediately." (*Id.* ¶ 23.) Tucker seconded the motion, and Allen, Tucker, and Page voted for and unanimously passed the motion. (*Id.* ¶ 25.) Stewart was thus removed from her position as General Registrar. (*Id.* ¶ 26.)

## II.  LEGAL STANDARDS

As previously mentioned, this matter is before the Court on Defendants' Motions to Dismiss for failure to state a claim and for lack of jurisdiction. Because Defendants'

6

Motions under Rule 12(b)(1) have jurisdictional implications, the Court must initially address their challenges to this Court's subject matter jurisdiction.

To clarify, Plaintiff's Second Amended Complaint contains thirteen (13) total counts. Counts III, IV, V, and VI allege violations of the U.S. Constitution, forming the basis for this Court's federal question jurisdiction.[6] (Second Am. Compl. ¶¶ 103–42.) The remaining nine (9) counts contain allegations of violations solely under Virginia law. The Court will address Plaintiff's federal claims first to determine if jurisdiction over this matter is appropriate.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They possess only such power as is authorized by the Constitution or conferred by statute. *Id.* "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Accordingly, Rule 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action.

Defendants may challenge subject matter jurisdiction on a 12(b)(1) motion in one of two ways. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation

---

[6] Diversity jurisdiction under 28 U.S.C. § 1332 is inapplicable because all entities and persons involved in this matter are Virginia citizens. Therefore, complete diversity does not exist between the parties.

7

omitted). First, the defendant may "contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* (citation and internal quotation marks omitted). In that case, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* Second, a defendant can argue "that the jurisdictional allegations of the complaint are not true." *Id.* Under such a scenario, courts can consider evidence beyond the pleadings. *Id.*; *see also White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). Under either circumstance, plaintiffs carry the burden of proving subject matter jurisdiction. *Piney Run Pres. Ass'n v. Cty. Comm'rs*, 523 F.3d 453, 459 (4th Cir. 2008). Here, the Board, Allen, Tucker, Mae, Nottoway County, and Nottoway County Board of Supervisors challenge the Court's subject matter jurisdiction under the first method and assert that the Eleventh Amendment bars all claims against them.[7]

The Eleventh Amendment provides that "[t]he judicial power of the United States

---

[7] Plaintiff does not specifically allege her U.S. Constitutional claims against Nottoway County or the Nottoway County Board of Supervisors. She simply alleges that "[f]or purposes of 42 U.S.C. § 1983, the actions of [the Board] . . . constitute a custom and/or practice of Nottoway County and/or the Nottoway County Board of Supervisors . . . ." (Second Am. Compl. ¶ 86.) Additionally, under each U.S. Constitutional claim, she includes specific provisions seeking injunctive relief and monetary damages against Nottoway County and the Nottoway County Board of Supervisors. (*See, e.g., id.* ¶¶ 109, 110, 111.)
First, a county acts only through its Board of Supervisors, making the Nottoway County Board of Supervisors the only properly named defendant. *See* Va. Code § 15.2-402; *see also Eberhardt v. Fairfax Cnty. Empl. Ret. Sys. Bd. of Trs.*, No. 1:10-cv-771, 2012 WL 1080926, at *9 n.4 (E.D. Va. Mar. 30, 2012). Second, Plaintiff has provided no facts as to the County's or the Board of Supervisor's alleged unlawful behavior and mere legal and conclusory statements will not suffice to state a claim against them. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that courts are not bound to accept as true legal conclusions couched as a factual assertion). Therefore, the Court finds that no plausible claim has been pled against Nottoway County or the Nottoway County Board of Supervisors and will only address Plaintiff's constitutional claims against the Electoral Board and its members.

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The Supreme Court has interpreted this Amendment to bar private individuals from suing a state in federal court. *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001). By extension, the Eleventh Amendment prohibits "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

### III. DISCUSSION

#### A. Claims Against the Nottoway County Electoral Board

In Virginia, a local electoral board is considered a state entity for Eleventh Amendment purposes. *Stokes v. Hopewell Electoral Bd.*, No. 3:19CV469-HEH, 2020 WL 591408, at *2 (E.D. Va. Feb. 6, 2020); *see also McConnell v. Adams*, 829 F.2d 1319, 1328 (4th Cir. 1987) (holding that "electoral boards . . . are dominated by the state"). Although Plaintiff's Second Amended Complaint alleges U.S. Constitutional violations under § 1983, "§ 1983 does not abrogate eleventh amendment immunity." *McConnell*, 829 F.2d at 1328. Additionally, the Supreme Court has clarified that state entities are not considered "persons" capable of being sued under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Plaintiff argues that the Eleventh Amendment does not bar the claims against the Board because "the Electoral Board is not subject to the Eleventh Amendment[.]" (Pl.'s

9

Mem. in Supp. at 5, ECF No. 113 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).) However, the reasons articulated in *Doyle* contravene Plaintiff's position, and her mere labeling of the Board as a municipality does not abrogate sovereign immunity. *Doyle* articulates that the issue of whether the Board "is to be treated as an arm of the State" and protected by Eleventh Amendment immunity or "instead to be treated as a municipality" to which no immunity applies, "turns upon the nature of the entity created by state law." 429 U.S. at 280. Thus, if the Court determines that the record indicates the Board is more like an arm of the state than it is like a municipality, it may assert Eleventh Amendment immunity. *See id.*

Here, it is clear that local electoral boards are more like an arm of the state than they are like municipalities. Local electoral boards derive all their power and responsibilities from Virginia statutory law. They are subject to the State Board's supervision and authority, which includes the power to initiate removal proceedings against local electoral board members. Va. Code §§ 24.2-106.01 and -103. Electoral board members are appointed by state circuit court judges. *Id.* § 24.2-106. The party affiliation of board members depends upon the party affiliation of the governor, not the party in power locally. *Id.* Although the counties pay the local electoral board members' salaries initially, the members' compensation is set by Virginia's General Appropriations Act and their salaries and other expenses are reimbursed annually from the state treasury. *Id.* § 24.2-108. Electoral boards must also maintain uniform statewide practices and proceedings. *Id.* § 24.2-103.

In sum, localities "have no measurable control over the appointment, discharge,

compensation, duties, or policies of the electoral boards. These are matters of state concern entrusted to state agencies." *McConnell*, 826 F.2d at 1327. Therefore, this Court concludes that the Board is an arm of the state for purposes of Eleventh Amendment immunity. Accordingly, Plaintiff's Counts III, IV, V, and VI against the Board are barred by sovereign immunity.

## B. Claims Against the Electoral Board Members

In addition to bringing constitutional claims against the Board, Plaintiff also pleads those same claims against the Board members—namely, Allen, Tucker, Page, April Wright ("Wright"), and Thomas Reynolds ("Reynolds").[8]

The Eleventh Amendment bars "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal.*, 519 U.S. at 429. Thus, the Amendment bars "suits seeking civil damages against state officers in their official capacity." *Davison v. Plowman*, 247 F. Supp. 3d 767, 780 (E.D. Va. 2017).

Courts generally distinguish between suits against government officials in their "official-capacity" and suits against them in their "personal-capacity." *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Official-capacity suits are akin to "pleading an action against an entity of which an officer is an agent." *Id.* (citation omitted). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government

---

[8] Tucker and Page are no longer members of the Board. (Defs.' Mem. in Supp. at 9, ECF No. 98.) Allen, Wright, and Reynolds are the current members of the Board; however, Plaintiff asserts that Wright and Reynolds are named in their "official capacity and for injunctive relief only." (Second Am. Compl. at 1.)

11

officer for actions taken under color of state law." *Id.*

### i. Official-Capacity Claims Against the Board Members

As Defendants correctly point out, Plaintiff cannot maintain her official-capacity claims against individuals no longer serving as a government official. *See, e.g., Wilson v. United States*, 332 F.R.D. 505, 528 (S.D.W. Va. 2019); *Grate v. South Carolina*, No. CV 3:18-00895-JFA, 2019 WL 13112818, at *2 (D.S.C. Sept. 24, 2019). That is because official-capacity suits are really suits against the holder of the office. *See Hafer*, 502 U.S. at 25. Thus, because Tucker and Page no longer serve as Board members, Plaintiff cannot maintain an official-capacity claim against them.

Eleventh Amendment immunity applies to "[s]tate officers acting in their official capacity," because such a suit "is not a suit against the official but rather is a suit against the official's office." *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (quoting *Will*, 491 U.S. at 71). As previously mentioned, local electoral board members "are considered state employees for the purposes of the Eleventh Amendment." *Stokes*, 2020 WL 591408, at *2 (citing *McConnell*, 829 F.2d at 1327–28). Because the Board is considered a state entity and its employees are state employees, the Eleventh Amendment bars any official-capacity claims against Allen, Wright, or Reynolds for retrospective, monetary relief.[9]

### ii. Personal-Capacity Claims against Board Members

In addition to the official-capacity claims, Plaintiff also pleads personal-capacity

---

[9] The Court will address Plaintiff's *Ex parte Young* injunctive relief claims below. *See infra* Section III.B.iii.

12

claims against all the current and former Board members. Whether a plaintiff has named a defendant in his official or personal capacity is generally determined by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997); *Francis v. Woody*, No. 3:09-cv-325, 2009 WL 1442015, at *4–5 (E.D. Va. May 22, 2009). However, the Supreme Court has cautioned that "allowing an action to proceed simply because the complaint names a state official in his or her individual capacity 'would be to adhere to an empty formalism'" and "undermine the principle . . . that Eleventh Amendment immunity represents." *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014). To hold otherwise would make the Eleventh Amendment subservient to "elementary mechanics of captions and pleadings." *Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir 2001), *overruled in part on other grounds by Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003).

The Fourth Circuit has held that personal-capacity claims should be construed as official-capacity claims when the state officials are nominal defendants and the state is the "real, substantial party in interest." *Martin*, 772 F.3d at 196 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). To determine if the state is the "real, substantial party in interest" courts must examine the following factors:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*.

*Id.* at 196 (cleaned up).

13

Local electoral boards and their members are considered arms of the state because they "bear a closer nexus with the state than with the localities where they work." *McConnell*, 829 F.2d at 1327. For the following reasons, the Court concludes that Plaintiff's personal-capacity claims against the Board members should be construed as official-capacity claims.

First, the Board members' allegedly unlawful actions were tied inextricably to their official duties. Plaintiff complains that the Board members unlawfully terminated her as General Registrar. Such action is inextricably tied to the Board members' official duties as this is one of their statutorily enumerated responsibilities under Virginia Code § 24.2-109(A). Additionally, it is the Board members' express duty to evaluate general registrars annually to ensure that they are carrying out their duties appropriately. *See* Va. Code § 24.2-109.1. Furthermore, it was the Electoral Board who terminated Plaintiff, not any individual Board member. The Board members individually do not have the authority to terminate or remove general registrars. That authority is only vested in the Board, acting through a majority vote of its members. *See id.* § 24.2-109.

Second, the Board would have borne the burden of relief had it decided to reinstate Plaintiff. Virginia Code §§ 24.2-110 and -111 outline that electoral boards appoint general registrars, and those registrars are paid through a compensation plan established by the General Assembly. Thus, it is the state that bears the responsibility to appoint, terminate, and pay general registrars, not the individual board members.

Third, any judgment in Plaintiff's favor would be against the state. As mentioned

14

above, it is the state that holds the power to appoint, terminate, and pay general registrars. Thus, any judgment would direct the Board, a state entity, to perform the requested relief. This directly contravenes the principle that the Eleventh Amendment serves.

Fourth, although Plaintiff does not expressly allege under her U.S. Constitutional claims that the Board members' actions were motivated by personal interests, she does allege a retaliatory motive under her First Amendment claim in Count VI. However, the notice provided to Plaintiff countenances that her removal was done so in furtherance of the state's interests. Nonetheless, even construing this factor in Plaintiff's favor, when all of the factors are considered in their totality, they still support the conclusion that the state is the real, substantial party in interest.

Lastly, the Board members' alleged unlawful actions were not *ultra vires*. For an act to be *ultra vires*, a government official must lack *any* authority to perform the act—the official must act entirely "beyond the scope of his statutory authority." *Dillon by Dillon v. Dir., Dep't of Corr.*, 552 F. Supp. 30, 33 (W.D. Va. 1982). "An ultra vires claim rests on the officer's lack of delegated power." *Scott v. Virginia Port Auth.*, No. 2:17cv176, 2018 WL 3232825, at *13 (E.D. Va. Feb. 7, 2018). A plaintiff claiming that the official acted in error in the exercise of their state-delegated power is insufficient to show that the act was *ultra vires*. "[A]n officer might make errors and still be acting within the scope of his authority." *Halderman*, 465 U.S. at 112 n.22 (1984) (internal quotation omitted).

Although Plaintiff matter-of-factly alleges that the Board had no authority to remove her as General Registrar, this assertion is meritless. The Board clearly had

15

authority to remove Plaintiff under Virginia Code § 24.2-109. In essence, her claim is really that their exercise of that statutory authority was in error because she did not fail to discharge her duties. (Pl.'s Mem. in Opp'n at 9.) Plaintiff simply alleging that the Board did not have the authority is insufficient. Thus, the Board clearly had the statutory authority to remove Plaintiff and claiming that its members did so in error does not make her removal an *ultra vires* act.

Accordingly, because the *Martin* factors weigh in favor of concluding that the state is the real, substantial party in interest, all of Plaintiff's personal-capacity claims will be construed as official-capacity claims. As such, the Eleventh Amendment bars any civil suit for damages against the current and former Board members.

### iii. Official-Capacity Claims Against the Board Members for Injunctive Relief

In *Ex parte Young*, the Supreme Court carved out a limited exception to Eleventh Amendment immunity. 209 U.S. 123, 168 (1908). This exception applies to claims against state officials sued in their official capacity, but only where the plaintiff seeks "prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 159–60).

As a threshold matter, the *Ex parte Young* exception does not apply to state entities such as the Board itself. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam); *Libertarian Party of Virginia v. Virginia State Bd. of Elections*, No. 1:10-cv-615 LMB/TCB, 2010 WL 3732012, at *5 (E.D. Va. Sept. 16, 2010), *aff'd sub nom.* 434 F. App'x 174 (4th Cir.

2011). As this Court previously pointed out, the "*Ex parte Young* doctrine only allows suit for injunctive or declaratory relief against individual officers or officials of a state or local government, not against a state or state agencies." *Libertarian Party of Va.*, 2010 WL 3732012, at *5.

First, the *Ex parte Young* exception only applies to prospective, injunctive relief for ongoing violations of *federal law*. *See Ex parte Young*, 209 U.S. at 123. As such, the *Ex parte Young* doctrine does not support "a court's grant of any type of relief, whether retrospective or prospective, based upon a State official's violation of State law." *Bragg v. West Va. Coal Ass'n*, 248 F.3d 275, 292–93 (4th Cir. 2001) (citing *Halderman*, 465 U.S. at 106). Therefore, Plaintiff cannot establish an *Ex parte Young* claim for the alleged violations of Virginia statutory and constitutional law.

Second, the exception only applies to "prospective" relief. Here, Plaintiff seeks back pay and benefits, compensatory damages, and punitive damages. (*See* Second Am. Compl. ¶¶ 109–11, 118–20, 127–29, 140–41.) Back pay and benefits, compensatory damages, and punitive damages are all retrospective, monetary relief and barred under the *Ex parte Young* doctrine. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747–48 (4th Cir. 2018); *see also Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (finding that punitive damages are retrospective, not prospective).

Lastly, the *Ex parte Young* exception also does not apply against the individual Board members. Because the authority to reinstate Plaintiff does not lie with the individual members, as none of them can unilaterally reinstate Plaintiff, that action would be taken by the Board itself, acting through a majority of its members. Thus, Plaintiff

17

cannot allege that the individual Board members are committing ongoing violations of federal law.

In sum, the Eleventh Amendment bars suit against the Board, as an arm of the state, and suits against the current and former individual Board members in their official and personal capacities. Accordingly, Defendants' Motions to Dismiss for lack of jurisdiction and failure to state a claim will be granted as to Counts III, IV, V, and VI, and they will be dismissed with prejudice.

## IV. CONCLUSION

Because the Eleventh Amendment bars Plaintiff's U.S. Constitutional claims against the Board and its members, the Court will grant Defendants' Motions to Dismiss (ECF Nos. 86, 97). Counts III, IV, V, and VI will be dismissed with prejudice. Because these claims formed the basis for this Court's federal question jurisdiction and will be dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the Court makes no determination as to the merits of the remaining claims and will dismiss them without prejudice. As such, Defendants' remaining Motions to Dismiss (ECF Nos. 81, 83, 95, 99) will be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 28, 2023
Richmond, VA

18